**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**PRESTON ASEVEDO**                                         **CIVIL ACTION**

**VERSUS**                                                            **No. 12-2005**

**NBCUNIVERSAL MEDIA, LLC, ET AL.**                  **SECTION I**

## ORDER AND REASONS

Before the Court is a motion[1] to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue filed by defendants, NBCUniversal Media, LLC and Syfy Media Productions, LLC.  Plaintiff, Preston Asevedo, opposes the motion and requests attorney's fees for the cost of defending against the motion to dismiss.[2]  Asevedo requests, in the alternative, that the Court continue the motion to dismiss to allow for jurisdictional discovery.[3]  For the following reasons, the motion to dismiss is **DISMISSED WITHOUT PREJUDICE** and the motion to continue the motion to dismiss to allow jurisdictional discovery is **DISMISSED AS MOOT**.  Defendants' request to transfer venue and plaintiff's request for attorney's fees are **DENIED**.

### *BACKGROUND*

This action arises out of the alleged willful copyright infringement by defendants, Shanon Parker, Marc Parker, Parker Brothers Concepts, Inc., Parker Brothers Choppers, Inc., Parker Brothers Enterprises, LLC (collectively, "the Parker Brothers defendants"), NBCUniversal Media, LLC ("NBCUniversal") and Syfy Media Productions, LLC ("Syfy"), of plaintiff, Preston

---

[1] R. Doc. No. 22.

[2] R. Doc. No. 31.

[3] R. Doc. No 30.

Asevedo's ("Asevedo") two-dimensional artwork entitled "Comedy Tragedy Skulls."[4] According to the complaint, the Parker Brothers defendants recently became the subject of the reality television show *Dream Machines* airing on NBCUniversal's Syfy network.[5] The television show documents Shanon Parker's and Marc Parker's efforts to manufacture custom and/or concept vehicles at their high-end auto body shop located in Melbourne, Florida.[6]

Asevedo, a professional artist and illustrator residing in St. Tammany Parish, Louisiana, alleges that the Parker Brothers defendants "built their entire brand" around his artwork and "prominently and blatantly copied and published [his] artwork on the *Dream Machines* television show without permission."[7] Among other things, Asevedo alleges that the infringing work can be seen on t-shirts, outdoor signage, and on defendants' finished vehicles.[8] Asevedo alleges that the NBCUniversal/Syfy production of *Dream Machines* is "replete with instances of . . . infringement" that are "so pervasive that it is rare for 30 seconds to pass on the 40+ minute television show without the infringing work appearing in one form or another."[9]

Asevedo also alleges that defendants have used his artwork on the following interactive websites accessible to Louisiana residents: http://www.parkerbrothersconcepts.com and

---

[4] R. Doc. No. 1, ¶¶ 1, 4-12. Parker Brothers Enterprises, L.L.C. was voluntarily dismissed without prejudice. R. Doc. No. 11.

[5] *Id.* at ¶ 16.

[6] *Id.* at ¶¶ 15-17. Asevedo alleges that the first season of *Dream Machines* features a "jet car" built for recording artist 50 cent, a "Mars Rover" built for the AutoTrader website, a custom car called the "Incinerator" for actor and professional wrestler John Cena, and a concept vehicle made to look like alien technology for the red carpet premiere of Universal Pictures' 2012 movie, "Battleship." *Id.* at ¶ 17.

[7] R. Doc. No. 1 at ¶¶ 18-23.

[8] *Id* at ¶ 20.

[9] *Id.*

http://www.syfy.com/dreammachines.[10]   Asevedo contends that the Parker Brothers defendants have been marketing and selling products containing his copyrighted design on their website, including T-shirts, hats, and key chains.[11]   Asevedo claims that NBCUniversal and Syfy have been hosting and publishing full episodes of the *Dream Machines* television show on the Syfy website.[12]

Asevedo further alleges that each defendant knew, or should have known, that they did not have permission to copy his artwork.[13]   Asevedo argues that after he became aware of the infringing activities, he contacted the Parker Brothers defendants in April 2012.[14]   Asevedo attached to his complaint the following email response from Shanon Parker:

> We used a variation of a skull logo that we understand was originally drawn by you for our logo.  We wanted to speak with you about using your name in co[n]junction with the artwork as we could never find out who the artist was until now.  We would have to come to you first if we had known.  Please contact me at your convenience to discuss this as we are preparing to sell t-shirts with our design and would like to compensate you for your work as well as credit you on it.[15]

Asevedo contends that the parties failed to come to an agreement concerning the use of his artwork.[16] He alleges that the Parker Brothers defendants nevertheless proceeded to sell products bearing his original design and continue to do so to this day.[17]

---

[10] *Id.* at ¶¶ 21-22.

[11] *Id.* at ¶ 23.

[12] *Id.* at 22.

[13] *Id.*  at ¶ 30.

[14] *Id.* at ¶ 24.

[15] *Id.*

[16] *Id.* at ¶ 25.

[17] *Id.*

On August 3, 2012, Asevedo filed this lawsuit seeking preliminary and permanent injunctive relief, damages, and attorneys' fees for injuries caused by defendants' alleged willful copyright infringement of his artwork.[18]   Specifically, Asevedo seeks relief for copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*,[19] unfair competition pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*,[20] wrongful acts, including fraudulent assertions of trademark rights pursuant to Louisiana Civil Code article 2315,[21] and unjust enrichment.[22]

NBCUniversal and Syfy filed this motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). NBCUniversal and Syfy contend that neither defendant has maintained "minimum contacts" with Louisiana sufficient for this Court to exercise personal jurisdiction over them. NBCUniversal and Syfy contend that the only allegations against them are that they have broadcasted or displayed images containing Asevedo's copyrighted artwork on the Syfy cable network and through the Syfy website.   NBCUniversal and Syfy argue that a national television broadcast alone does not render the broadcaster subject to personal jurisdiction in any jurisdiction with viewers.   NBCUniversal and Syfy also claim that Asevedo has not alleged any purposeful contact with the forum sufficient to establish personal jurisdiction in this case. NBCUniversal and Syfy further contend that the complaint should be dismissed because it was brought in an improper venue under the Copyright Act, 28 U.S.C. § 1400(a).   As alternative

---

[18] *Id.* at ¶ 1.

[19] *Id.* at ¶¶ 31-35

[20] *Id.* at ¶¶ 36-39.

[21] *Id.* at ¶¶ 40-41.

[22] *Id.* at ¶¶ 42-43.

relief, NBCUniversal and Syfy request that the case be transferred to the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses.

Asevedo opposes the motion to dismiss for lack of jurisdiction and contends that this Court may exercise specific personal jurisdiction over NBCUniversal and Syfy based on the fact that (1) they broadcast the *Dream Machines* program on television to a national audience, including viewers in Louisiana; (2) they made the Dream Machines program available through Syfy's website, where it can be viewed by people in Louisiana; and (3) the harm of the infringement was suffered in Louisiana by a Louisiana artist whose works were developed and copyrighted from Louisiana.  Asevedo also contends that NBCUniversal and Syfy have continuous and systematic contacts with Louisiana such that they are subject to general personal jurisdiction in this forum.  Asevedo argues that venue is proper under the Copyright Act and that the U.S. District Court for the Central District of California is not a more convenient forum for this action.  According to Asevedo, NBCUniversal's and Syfy's jurisdictional challenge is "highly suspect," and it  misstates the holdings and applicability of the cases cited in support of the motion such that he is entitled to attorneys fees incurred in connection with the preparation of his opposition.

Asevedo contends, in the alternative, that this Court should allow for jurisdictional discovery if it does not deny the motion to dismiss.[23]   Asevedo contends that he has presented factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts to establish jurisdiction over NBCUniversal and Syfy.  Asevedo contends that discovery is needed to determine the extent of NBCUniversal and Syfy's contacts with the

---

[23] R. Doc. No. 30.

forum, including whether any employees of NBCUniversal and Syfy or their Louisiana subsidiaries were involved in producing or broadcasting *Dream Machines* which actions would support a finding of specific personal jurisdiction.   NBCUniversal and Syfy respond that such discovery would be futile and, alternatively, should be reasonably confined to written discovery limited in scope to establishing necessary jurisdictional facts.

*LAW AND ANALYSIS*

## I.  Personal Jurisdiction

When a  foreign defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing  the Court's personal jurisdiction over the defendant.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).  Where, as here, the Court rules without conducting an evidentiary hearing, the plaintiff bears the burden of establishing a *prima facie* case that the Court has jurisdiction over a defendant.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).[24]  If the defendant disputes the factual bases for jurisdiction, "the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (citations and quotations omitted).  The court should not, however, act as a fact finder and it must construe all disputed facts in the plaintiff's favor.  *Id.*

A federal court may only exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth

---

[24] While the plaintiff must ultimately demonstrate that jurisdiction is proper by a preponderance of the evidence, courts are permitted to defer the resolution of that question until trial to allow it to be resolved along with the merits. *See Walk Haydel & Assocs., Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

Amendment. *Moncrief Oil Int'l v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir. 2007). Because the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits, the Court need only consider the second step of the inquiry. *Walk Haydel*, 517 F.3d at 242-43 (citing *A & L Energy, Inc. v. Pegasus Group*, 791 So.2d 1266, 1270 (La. 2001)).

"[T]he Fourteenth Amendment Due Process clause requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.' " *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citing *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Burger King,* 471 U.S. at 475 (citations omitted).

"The 'minimum contacts' prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Freudensprung*, 379 F.3d at

7

343.  "Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant."  *Luv N' care, Ltd., v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citation and quotation marks omitted).  "Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum."  *Id.*  (citation and quotation marks omitted).

### A.  Specific Jurisdiction

The U.S. Court of Appeals for the Fifth Circuit has articulated the following three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V,* 310 F.3d 374, 378 (5th Cir. 2002): (citing *Burger King*, 471 U.S. at 474).  "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

### 1.  The Television Broadcast

The first question is whether specific personal jurisdiction may be exercised over NBCUniversal and Syfy as the "producers and distributors of the Parker Brothers' television show."[25]  The complaint states that "[t]ogether with the Parker Brothers Defendants, Syfy and NBCUniversal reproduce, distribute, and publicly perform and display the Parker Brothers

---

[25] *See* R. Doc. No. 1, at ¶ 28

Defendants' infringing products and works on television . . . ."[26]  The complaint further states that "[e]ach of the Defendants knew, or should have known, that they did not have permission to copy Plaintiff's Artwork."[27] No other jurisdictional facts are alleged with respect to the claimed production and distribution of the television show.

NBCUniversal and Syfy contend that they have maintained no contacts with Louisiana other than by way of the national broadcast of *Dream Machines*.  NBCUniversal and Syfy assert that they have never engaged in any business with Asevedo, that they have never sold or offered for sale any merchandise relating to *Dream Machines*, and that the national broadcast of *Dream Machines* was not specifically targeted to Louisiana.  NBCUniversal and Syfy contend that the complaint must be dismissed because "[c]ourts have consistently held that a national television broadcast alone does not render the broadcaster subject to personal jurisdiction in any jurisdiction with viewers." (R. Doc. Nos. 22-1, 32, 36) (citing *Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir. 1993); *The Outdoor Channel, Inc. v. Performance One Media, LLC*, 826 F. Supp. 2d 1271 (N.D. Okla. 2011); *Annie Oakley Enters.*, 703 F. Supp. 2d 881 (N.D. Ind. 2010); *Busch v. Viacom Intern., Inc.*, 477 F. Supp. 2d 764 (N.D. Tex. 2007); *Hatfill v. N.Y. Times Co.*, No. 04-807, 2004 WL 3023003 (E.D. Va. Nov. 24, 2004); *Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F. Supp. 761 (W.D. Ky. 1997); *Publ'ns Intern., LTD. v. Simon & Schuster, Inc.*, 763 F. Supp. 309 (N.D. Ill. 1991)).

Asevedo responds that jurisdiction is proper because NBCUniversal and Syfy sent their infringing products into the "steam of commerce" by broadcasting the program in all 50 states. Asevedo also contends that jurisdiction is proper because the "effects" of the broadcast were felt

---

[26] *Id.* at ¶ 29.

[27] *Id.* at ¶ 30.

in Louisiana.  Asevedo notes that the cases cited by NBCUniversal and Syfy do not answer the question of whether personal jurisdiction may be exercised over the actual broadcaster of infringing material, and that "numerous other federal courts around the country" have come to the conclusion that jurisdiction may be exercised over the broadcaster of infringing television programs.  (R. Doc. No. 31) (citing *Indianapolis Colts, Inc. v. Metro. Baltimore Football  Club*, 34 F.3d 410 (7th Cir. 1994); *Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir. 1993); *Scorpinti v. Fox Television Studios, Inc.*, No. 11-64, 2012 WL 3791314 (N.D. Iowa Aug. 31, 2012); *Holmes v. TV-3, Inc.*, 141 F.R.D. 692 (W.D. La. 1991) (Payne, Mag. J.); *Tonka Corp. v. TMS Entm't, Inc.*, 638 F. Supp. 386 (D. Minn 1985); *Julia Cosmetics, Inc. v. Nat'l Broadcasting Co.*, 355 F. Supp. 938 (W.D. La. 1973)).

Although the parties dispute the holdings and applicability of these decisions, each fits comfortably within settled jurisdictional principles.  The most obvious basis for exercising jurisdiction arises when the producer or broadcaster of a television program directly and purposefully reaches into the forum in some manner.  For example, in *Holmes v. TV-3, Inc.*, 141 F.R.D. 692 (W.D. La. 1991) (Payne, Mag. J.), the court exercised specific personal jurisdiction over a Mississippi television station that had "significant contacts" with Louisiana based on the fact that it had deliberately relied upon its signal reaching Louisiana to generate advertising revenue.  Similarly, in *Julia Cosmetics, Inc. v. Nat'l Broadcasting Co.*, 355 F. Supp. 938 (W.D. La. 1973), the district court exercised jurisdiction over the distributor of a television program which was "provided for telecast over television stations in Louisiana with which [the defendant had] contracts."

As Asevedo notes, several district courts have also exercised jurisdiction over an out-of-state producer of a national broadcast after expressly finding that the program was placed into

10

the "stream of commerce" and foreseeably reached viewers in the particular forum.  *See Scorpinti*, 2012 WL 3791314, at *6.  (exercising personal jurisdiction over the creator and producer of a television show); *Tonka*, 638 F. Supp. at 390-91 (exercising personal jurisdiction over the producer and seller of a children's television show); *see also Zimmerman v. United States Football League*, 637 F. Supp. 46, 47-48 (D. Minn 1986) ("[B]roadcasts into a state can constitute sufficient jurisdictional contacts.").  As NBCUniversal and Syfy note, however, other district courts have declined to exercise jurisdiction over an out-of-state television company in the absence of a showing that the defendant directed the national broadcast at the forum in some manner.  *See The Outdoor Channel*, 826 F. Supp. 2d at 1280-82 (declining to exercise jurisdiction over a company that licensed programming to DISH Network and DirectTV for national broadcast without specifically directing the programming at the forum); *Auto Channel, Inc.*, 995 F. Supp. at 764-66 (declining to exercise jurisdiction over a company that licensed programming to Primestar, HBO Direct, and DirectTV which may, in turn, have sold programming to subscribers in the forum).

An important factor" in each of these decisions was the second prong of the minimum contacts analysis, i.e., the nexus between the plaintiff's cause of action and the defendant's forum-related contacts.  *See Tonka*, 638 F. Supp. at 390.  In the stream-of-commerce cases cited by Asevedo, the courts expressly recognized that jurisdiction was being exercised because the defendant's contacts with the forum were the same acts that gave rise to the plaintiff's cause of action.  *See id.*  ("TMS' only contact with Minnesota is precisely the conduct upon which plaintiff bases its cause of action."); *Scorpinti*, 2012 WL 3791314, at *8 ("[T]he broadcast of 'The Gates' in Iowa constitutes both the contacts with the forum state and the conduct underlying the cause of action.").  *See also Julia Cosmetics, Inc.*, 355 F. Supp. at 943 ("This

whole licensing agreement and the relationship between plaintiff and defendant is based solely upon the fact that the TV show 'Julia' is distributed by NBC to its affiliated television stations in Louisiana which then broadcast the program within this State.").  In the cases cited by NBCUniversal and SYFY, the lack of such nexus was a decisive factor in declining to exercise jurisdiction in connection with a national television broadcast.  *See Ham*, 4 F.3d at 416 ("We conclude that the instant action does not arise from contacts of [the defendants] with Texas."); *Simon & Schuster, Inc.*, 763 F. Supp. at 312 ("We reiterate that PIL's suit is not inextricably entwined with the television broadcast of Twin Peaks.");  *The Outdoor Channel, Inc.*, 826 F. Supp. 2d at 1282 ("[T]he second prong of the minimum contacts test is attenuated at best . . . when the use of [the] infringing mark was broadcast nationally and not specifically targeted at Oklahoma residents."); *Auto Channel, Inc.*, 995 F. Supp. at 766 ("[T]he statutorily required relationship between Plaintiffs' tort claims and Defendants' minimal contacts to Kentucky is so attenuated as to be *de minimus*."); *see also Zimmerman*, 637 F. Supp. at 48 (declining jurisdiction because "plaintiff's lawsuit does not claim that the broadcasts of USFL games in Minnesota are in any way improper.").

A review of this circuit's precedent indicates that the Fifth Circuit has been "reluctant to extend the stream-of-commerce principle outside the context of products liability cases, including cases involving contract or copyright." *Luv N' care, Ltd. v. Insta-Mix, Inc*.,  438 F.3d 465, 472-73 (5th Cir. 2006)  (internal quotations and citation omitted).   However, the Fifth Circuit has looked to the stream-of-commerce principle in such cases when "the same public policy concerns that justify use of the stream-of-commerce principle in the products liability context are present."  *Id.*; *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364 (5th Cir. 2010) (discussing when the stream-of-commerce principle applies).

When it applies, the Fifth Circuit adheres to the "more relaxed" stream of commerce standard, which does not require additional action, beyond foreseeability, to "convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."[28] *Luv N' care*, 438 F.3d  at 470 (5th Cir. 2006).  Rather, "[t]he Fifth Circuit is among the circuits that have interpreted *World-Wide Volkswagen* to hold that 'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'" *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 111, 107 S. Ct. 1026, 1031, 94 L. Ed. 2d 92 (1987)).

In *Luv N' Care*, for example, the Fifth Circuit held that jurisdiction existed in a copyright infringement and trademark dilution case involving two companies that sold a particular kind of bottle.   One of the companies was based in Colorado and its only contact with the forum was by way of the fact that it sold its bottles to Wal-Mart which, in turn, sold bottles in Louisiana.  The Fifth Circuit held that the Colorado company had purposefully availed itself of the privilege of doing business in Louisiana when it placed its bottles into the stream of commerce by selling them to Wal-Mart, which foreseeably sold the bottles in Louisiana as stated on the company's invoices.   The Fifth Circuit also found that the requisite nexus existed between the plaintiff's cause of action and the defendant's forum-related contacts.  The court explained that the plaintiff "claim[ed] infringement from the same bottle that travelled through the stream of commerce from Colorado to Louisiana."

---

[28] To the extent that NBCUniversal and Syfy have attempted to rely upon the Supreme Court's plurality opinion in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (O'Conner J., concurring), the Court notes that the Fifth Circuit has expressly declined to adopt Justice O'Conner's plurality opinion.  *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 420 (5th Cir.1993) ("In the years after Asahi, the Fifth Circuit has continued to follow the original 'stream-of-commerce' theory established in the majority opinion of *World-Wide Volkswagen*, and has rejected the 'stream-of-commerce-plus' theory advocated by the *Asahi* plurality.").  *See also Luv N' care, Ltd. v. Insta-Mix, Inc.*,  438 F.3d 465, 470 (5th Cir. 2006); *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 372 (5th Cir. 2010).

The court reached its decision concerning the nexus requirement in *Luv N' Care* after considering its analysis in *Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir. 1993), which appears to be the most analogous Fifth Circuit decision to the present case.  In *Ham*, the plaintiff sought a declaratory judgment that his song "La Grange" did not infringe on the copyrights associated with the defendants' "Boogie Chillen" songs.  The plaintiff argued that the owners of the "Boogie Chillen" songs were subject to jurisdiction in Texas because they had placed their songs into the stream of commerce and sought to exploit them on the broadest possible geographical basis.  Significantly, the court *agreed* that the defendants' activities "connect [them] to Texas within the meaning of our stream of commerce cases,"  but it declined jurisdiction because the song at issue in the plaintiff's declaratory judgment action was not the one that had been distributed through the stream of commerce to the forum state.  The court suggested, however, that "the result might be different if the song distributed in Texas and the allegedly infringing song were one and the same." *See Luv N' Care*, 438 F.3d at 473 (citing *Ham*, 4 F.3d at n.13 ("We might reach a different result in an action asserting 'Boogie Chillen' as infringing the copyright on another work.")).

The remaining cases cited by the parties applied the "effects test" to determine whether tortious content in a national broadcast was "aimed" at the forum.  *See Indianapolis Colts, Inc. v. Metro. Baltimore Football  Club*, 34 F.3d 410 (7th Cir. 1994) (holding that the national broadcast of football games by the Baltimore CFL Colts would cause an injury that would be felt mainly in Indiana where the largest concentration of consumers would likely be confused by the alleged infringement); *Busch v. Viacom Intern., Inc.*, 477 F. Supp. 2d 764 (N.D. Tex. 2007) (holding that the forum state was not the "focal point" of the challenged broadcast by the host of *The Daily Show*);  *Johnson v. Tuff N Rumble Mgmt. Inc.*, No. 99-1374, 1999 WL 1201891 (E.D.

14

La. Dec. 15, 1999) (Vance, J.) (holding that the defendant intentionally aimed its conduct at Louisiana knowing that the plaintiffs would feel the brunt of the injury in that state).  *See also Colo'n v. Mara Brock Akil*, No. 08-26, Record Documents 65 and 91 (S.D. Ind. 12/8/2008 and 9/21/2009) *aff'd*  449 Fed. Appx. 511, 2011 WL 5869454 (7th Cir. Nov. 23, 2011) (holding that jurisdiction did not exist over a television writer's lawsuit against the producers of *The Game* because there was no evidence that any of the defendants produced, broadcast, or expressly aimed the allegedly infringing content at the forum).

In this case, the relevant jurisdictional facts with respect to NBCUniversal and Syfy's role in the distribution and/or broadcast of the *Dream Machines* are still unknown and reasonably in dispute.  The allegations in the complaint state only that NBCUniversal and Syfy are the "producers and distributors of the Parker Brothers' television show," and that they "reproduce, distribute, and publicly perform and display the Parker Brothers Defendants' infringing products and works on television."[29]  Asevedo contends in his memoranda that "it is well-known that these Defendants have network affiliates in Louisiana (including New Orleans' own WDSU-TV, which has continuously broadcast NBC programming since at least 1948)."[30]  Asevedo also asserts that NBCUniversal and Syfy "have contracts to supply programming on NBCUniversal and its various cable networks to viewers in Louisiana."[31]  However, NBCUniversal and Syfy refute these assertions and respond that "it is common knowledge the Syfy channel is distributed to Louisiana consumers via cable and satellite operators."[32]

---

[29] R. Doc. No. 1., at ¶¶ 28-29.

[30] R. Doc. No. 31, at pp. 2-3.

[31] *Id.* at p. 3.

[32] R. Doc. No. 36, at pp. 11-12.

The parties also dispute NBCUniversal's and Syfy's role in the production of *Dream Machines* including their knowledge, if any, of the alleged infringement.  Asevedo alleges in his complaint that NBCUniversal and Syfy produced the *Dream Machines* television show and that "[e]ach of the Defendants knew, or should have known, that they did not have permission to copy Plaintiff's Artwork."[33] Asevedo contends in his memoranda that the facts available to him indicate that NBCUniversal and Syfy played an active role in the infringement and exerted creative influence on *Dream Machines.*[34]  NBCUniversal and Syfy summarily dismiss these allegations as "pure speculation," but they recognize that such considerations were a "significant factor" supporting the decisions cited by Asevedo. (R. Doc. No. 36, pp. 3, 6) (citing *Tonka Corp. v. TMS Entm't, Inc.*, 638 F. Supp. 386 (D. Minn. 1985) and *Scorpini v. Fox Television Studios, Inc.*, No. 11-64, 2012 WL 3791314 (N.D. Iowa Aug. 31, 2012)).  NBCUniversal and Syfy claim that "*Dream Machines* was produced for Syfy by a nonparty production company, Triage, Inc.," which they claim "developed and sold rights in the work to non-party Realand Productions, LLC, an indirect, wholly-owned subsidiary of NBCUniversal."[35]

In light of the foregoing, this Court is not yet in a position to determine whether it may exercise specific personal jurisdiction over NBCUniversal and/or Syfy.  The Court finds that Asevedo's request for discovery has merit because he has presented "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts."  *Blessey Marine Servs. Inc. v. Jeffboat, LLC*, No. 10-1863, 2011 WL 651999, at *5-*7 (E.D. La. Feb 10, 2011) (Fallon, J.) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)).  Discovery may reveal whether NBCUniversal and Syfy have sufficient contacts with the

---

[33] R. Doc. No. 1. at ¶ 30.

[34] R. Doc. No. 31, at p. 5.

[35] R. Doc. No. 42, at p. 2.

16

forum as the alleged producers and/or broadcasters of *Dream Machines* to support a finding of personal jurisdiction.[36]

### 2. The Internet Website

The next question is whether specific jurisdiction may be exercised over NBCUniversal and Syfy based on their internet activities.  Asevedo alleges that defendants have used his artwork on the following interactive websites:   http://www.parkerbrothersconcepts.com and http://www.syfy.com/dreammachines.[37]  Asevedo contends that the Parker Brothers defendants have been marketing and selling products containing his copyrighted design on their website, including T-shirts, hats, and key chains.[38]  With respect to NBCUniversal and Syfy, however, Asevedo alleges only that they host and publish episodes of *Dream Machines* on the Syfy website.[39]  NBCUniversal and Syfy contend that this activity is insufficient to support the exercise of specific jurisdiction.

When analyzing whether a defendant's website can support a finding of personal jurisdiction over that defendant, the Fifth Circuit has employed the "sliding scale" analysis of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) which provides:

> At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet.  In this situation, personal jurisdiction is proper. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise

---

[36] On the showing made, the Court is not inclined to limit discovery to written discovery.  Any dispute with respect to the methods needed to complete discovery may be directed to the U.S. Magistrate Judge.  The motions deadline, pretrial conference date, and trial date remain intact.

[37] *Id.* at ¶ 21-22.

[38] *Id.* at ¶ 23.

[39] *Id.* at ¶ 22.

> on the Internet. With passive websites, personal jurisdiction is not appropriate. In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website.

*Mink v. AAAA Dev., LLC,* 190 F.3d 333, 336 (5th Cir. 1999) (citing *Zippo,* 952 F. Supp. at 1124) (internal citations and quotations omitted).[40]

In this case, Asevedo has failed to establish a *prima facie* case that the Syfy website is anything more than a passive website that merely allows viewers to watch episodes of *Dream Machines*. Although Asevedo contends, vaguely, in his memoranda that "[d]efendants do sell other products on their sites, including T-shirts, DVDs, and games" in an interactive "virtual store," he never contends that NBCUniversal or Syfy operate that "virtual store" on the Syfy website. Rather, the allegations in the complaint state that the virtual store exists within the Parker Brothers' website, while the Syfy website merely allows visitors to watch episodes of *Dream Machines*. (R. Doc. No. 1, ¶¶ 21-23); s*ee Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) ("It does not of course follow from the fact that jurisdiction may be asserted over [one of the defendants], that jurisdiction may also be asserted over either of the other defendants."). Moreover, the vague allegation that "defendants" may sell  "other products" on the internet has no bearing on this case and need not be considered. *See Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002) ("Since this defamation action does not arise out of the solicitation of subscriptions or applications by Columbia, those portions of the website need not be considered."). Accordingly, the Court does not find that personal

---

[40] The *Zippo* analysis has been applied in both general jurisdiction and specific jurisdiction cases, but the Fifth Circuit has noted that "it is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction. . . ." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

jurisdiction may be exercised over NBCUniversal and Syfy based on their alleged internet activities.[41]

### B. General Jurisdiction

Where specific jurisdiction is lacking, a court may nevertheless exercise "general jurisdiction" based on a defendant's contacts with the forum unrelated to the controversy. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). "To exercise general jurisdiction, the court must determine whether the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston v. Multidata Systems, Intern. Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)). "The contacts must be reviewed in toto, and not in isolation from one another." *Johnston*, 523 F.3d at 610 (citing *Holt Oil*, 801 F.2d at 779)). "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610. As with specific jurisdiction, after the plaintiff makes such showing, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable. *Id.* at 615.

NBCUniversal and Syfy contend that general jurisdiction is not appropriate in this case because they do not maintain systematic and continuous contacts with the forum. In support of

---

[41] Asevedo has provided no basis for this Court to authorize further discovery on this issue. *See Blessey Marine Servs., Inc.*, 2011 WL 651999, at *5 ("To be sure, a district court may properly deny a request for jurisdictional discovery if such discovery would not 'add any significant facts' to the personal jurisdiction inquiry and would thus 'serve no purpose.'") (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir.1982)).

their motion to dismiss, NBCUniversal and Syfy submitted the declaration of Chelley E. Talbert,

litigation counsel for NBCUniversal and Syfy, who states, in relevant part, as follows:

> 1.   NBCUniversal is a Delaware limited liability company headquartered in New York, New York.   Syfy is a Delaware limited liability company headquartered in Universal City, California.
>
> 2.   Syfy does not have any employees in Louisiana. NBCUniversal regularly employs two people located in Louisiana, both of whom work from home offices.
>
> 3.  In 2012, NBCUniversal employed approximately 50 people in Louisiana who were "daily hires," the majority of whom worked from home or in connection with a temporary production, such as a local sporting event.
>
> 4.  Neither NBCUniversal nor Syfy owns any real estate or other property in Louisiana.
>
> 5.   NBCUniversal owns seven subsidiary companies that are incorporated in Louisiana, but none of those subsidiaries maintains a principal place of business in Louisiana.
>
> 6.  One of those seven subsidiary companies is a film production company that has a bank account with J.P. Morgan Chase and may conduct transactions at a local Louisiana Chase banking branch from time to time.  However, that subsidiary company has no relationship with Asevedo, Syfy, or this litigation.   Neither NBCUniversal nor Syfy directly maintains any accounts with financial institutions in Louisiana.
>
> 7.   Neither NBCUniversal nor Syfy pays taxes of any kind to Louisiana or its political subdivisions.
>
> 8.  To the best of my  knowledge, neither NBCUniversal nor Syfy has ever engaged in any business with Preston Asevedo.
>
> 9.  Witnesses that are likely to be called to testify on behalf o NBCUniversal and Syfy in the above-captioned litigation reside in New York, California, or Florida, and the documents and other information relevant to this litigation are located in Los Angeles, California.

Asevedo responds that NBCUniversal and Syfy have hired numerous employees in

Louisiana, produced television programs and films in Louisiana, broadcast programming into

Louisiana on television and the internet, maintain affiliates incorporated in Louisiana, sell merchandise in Louisiana, and may own or lease property in Louisiana.  Asevedo contends that the relevant jurisdictional facts are in defendants' possession and that he should be afforded an opportunity to discovery whether these contacts amount to those necessary to establish general jurisdiction over NBCUniversal and Syfy.   Because Asevedo has suggested with reasonable particularity the possible existence of facts giving rise to general jurisdiction, the Court will defer ruling on the general jurisdiction inquiry pending the completion of discovery.   *See Blessey Marine Servs., Inc.*, 2011 WL 651999, at *5-*6.

## II.  Venue

NBCUniversal and Syfy also contend that venue is improper in Louisiana under the Copyright Act.   When venue is challenged, the burden is on the plaintiff to establish that the district he chose is a proper venue.  *Langton v. CBeyond commc'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003); *Smith v. Fortenberry*, 903 F. Supp. 1018, 1020 (E.D. La. 1995) (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3826).   In most instances, "the purpose of the statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient" forum.   *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-84, 99 S. Ct. 2710, 2716, 61 L. Ed. 2d 464 (1979) (emphasis omitted). The general rule is that venue must be established for each separate cause of action and for each defendant. *See McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001) ("[I]t is well established that in a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant.") (quoting *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 240 (D. Md. 1997)).

When resolving a Rule 12(b)(3) motion without an evidentiary hearing, a court accepts a plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor. *See Langton*, 282 F. Supp. 2d at 508; *McCaskey*, 133 F. Supp. 2d at 523. Furthermore, the Court resolves any conflicts in plaintiff's favor. *McCaskey*, 133 F. Supp. 2d at 523. Courts have provided the plaintiff with the benefit of the doubt when determining the governing facts. *Id.* Unlike a Rule 12(b)(6) motion, however, a court may consider extrinsic materials, including affidavits and other materials, in determining whether venue is proper. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004); *The CIT Group/Commercial Servs., Inc. v. Romansa Apparel, Inc.*, No. 02-954, 2003 WL 169208, at *2 (N.D. Tex. Jan. 21, 2003) ("[T]he court accepts uncontroverted facts alleged in the complaint as true and resolves conflicts in the parties' affidavits in favor of the plaintiff."); *McCaskey*, 133 F. Supp. 2d at 523; *Tinsley v. Comm'r*, No. 96- 1769, 1998 WL 59481, at *2 (N.D. Tex. Feb. 9, 1998) ("[M]otions to dismiss for improper venue under 12(b)(3) are generally resolved through submission of affidavits and declarations and discovery materials").

Venue for claims asserted pursuant to the Copyright Act are governed by a specialized venue statute, 28 U.S.C. § 1400(a), which provides:

> Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

Pursuant to § 1400(a), venue is proper where a defendant resides or may be found. It is well established that an individual defendant "resides" for venue purposes in the district of his residence or legal domicile. *See* 17 Moore's Federal Practice 3d 110.03 (2002). Venue may also be proper where an individual defendant "may be found." 28 U.S.C. § 1400(a). Courts have held that an individual defendant "may be found" in a district where he is subject to personal

jurisdiction. *See Gen. Design Sign Co. v. Am. Gen. Design, Inc.*, No. 02 -2298, 2003 WL 251931, at *2 (N.D. Tex. Jan. 31, 2003); *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1094 (N.D. Cal. 2002) (noting that the venue inquiry is conducted as if the district were its own state); *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp. 207, 215 (S.D.N.Y. 1995).

The threshold inquiry under the copyright venue statute is whether Asevedo's claims "arise under any Act of Congress relating to copyrights." A claim arises under the Copyright Act if the complaint seeks a remedy expressly granted by the Act, if the complaint asserts a claim requiring construction of the Act, or if the complaint "presents an issue surrounding a 'distinctive policy of the Act requiring that federal principles control the disposition of the claim.'" *Lombardi v. Suares*, 923 F. Supp. 51, 53 (S.D.N.Y. 1996) (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964)); *see also Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 303-04 (2d Cir. 2004) (addressing copyright jurisdiction pursuant to 28 U.S.C. § 1338(a) and stating, "[f]or an action to arise under one of these acts [copyright act, patent act, or trademark act], the plaintiff's well-pleaded complaint must establish either that the act creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of law under the act.").

Asevedo has asserted claims for copyright infringement, unfair competition, wrongful acts (including fraudulent assertion of trademark rights), and unjust enrichment.  NBCUniversal and Syfy contend that these claims arise either directly under the Copyright Act or are preempted by the Copyright Act such that they should be analyzed under the Copyright venue statute. Assuming without deciding that each of Asevedo's claims must be analyzed under the Copyright venue statute, NBCUniversal and Syfy's objections to venue may only be resolved after the completion of discovery.  The parties agree that neither NBCUniversal nor Syfy "resides" in this

district, and whether they "may be found" in this district depends on whether they are subject to personal jurisdiction.[42]   Accordingly, the Court will defer ruling on the motion to dismiss for improper venue pending completion of discovery.

## III. Transfer

NBCUniversal and Syfy also request that the Court transfer this matter to the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1404.  NBCUniversal and Syfy contend that the Central District of California is a more convenient venue because Asevedo is the only witness located in the Eastern District of Louisiana, and the majority of the other witnesses and evidence are located in or near Los Angeles, California.  Asevedo responds that none of the parties reside in California, that California is not the locus of operative facts, and that the public interest factors do not weigh in favor of transfer.

The U.S. Code permits a district court to transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice" to any other district "where it might have been brought."   28 U.S.C. § 1404(a).  The moving party has the burden of showing "good cause" for a transfer by "clearly demonstrat[ing] that a transfer is '[f]or the convenience of the parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (quoting 28 U.S.C. § 1404(a)).   If the transferee court is not clearly more convenient, then the court deciding whether to transfer should respect the plaintiff's choice of venue.  *Id.*

When determining whether a transfer is warranted for the convenience of the parties and witnesses and the interest of justice, the Court must consider private and public interest factors.

---

[42] NBCUniversal and Syfy's venue challenge under the Copyright Act is wholly dependent on the personal jurisdiction inquiry.  If this Court lacks personal jurisdiction over NBCUniversal and Syfy, there is no need to determine whether venue is proper on some other basis because NBCUniversal and Syfy will be dismissed for lack of personal jurisdiction.  In the event that personal jurisdiction may be exercised over NBCUniversal and Syfy, then venue will also be proper under the Copyright Act.  There is no need to determine whether venue would be proper over any claims that are not preempted by the Copyright Act because NBCUniversal and Syfy have not argued that venue is improper on any ground other than the Copyright venue statute.  NBCUniversal and Syfy have, at this point, waived any right to challenge venue on such grounds.

The private interest factors include, "'(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).  The public interest factors include, "'(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.*  None of these factors are "of dispositive weight." *Id.* (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

As a preliminary matter, it is not entirely clear that this copyright action might have been brought in the Central District of California.  "A district where a lawsuit 'might have been brought' is one in which the court would have had subject matter jurisdiction, the defendants would have been subject to personal jurisdiction, and venue would have been proper." *Shull v. United Barge Lines*, No. 09-5515, 2010 WL 745006, at *5 (E.D. La. Feb. 26, 2010) (Barbier, J.) (citing *Hoffman v. Blaski*, 363 U.S. 335, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960)).  "A court may not transfer a case unless the plaintiff could have sued *all* of the defendants in the transferee court." *Ill. Union Ins. Co. v. Tri Core Inc.*, 191 F. Supp. 2d 794, 797 (N.D. Tex. 2002) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1971)) (emphasis in original).

According to the declaration of Chelley E. Talbert ("Talbert"),[43] Syfy is headquartered in Universal City, California.  As a result, the case clearly might have been brought against Syfy in the Central District of California.  Talbert also attests that the companies responsible for the

---

[43] R. Doc. Nos. 32-1, 42-1.  Talbert attests that she is Litigation Counsel for NBCUniversal and Syfy.   R. Doc. No. 32-1, at ¶ 2.

production of *Dream Machines* are based in Los Angeles.[44]  Therefore, the Parker Brothers defendants arguably would have been subject to personal jurisdiction and venue in the Central District of California since the producers of their television show were allegedly operating out of Los Angeles.  As for NBCUniversal, however, Talbert attests only that it is a Delaware limited liability company headquartered in New York, New York.[45]  There has been no showing that NBCUniversal would have been subject to personal jurisdiction and/or venue in California other than counsel's assertion that NBCUniversal has an office in Los Angeles.[46]

Nevertheless, even if this action could have been brought in the Central District of California, the Court is not convinced that NBCUniversal and Syfy have "clearly demonstrated" that a transfer is warranted for the convenience of the parties and witnesses.  Asevedo claims that he designed the Comedy/Tragedy Skulls in Louisiana, and that the infringing activities occurred in Florida.  According to Talbert, the witnesses likely to testify on behalf of NBCUniversal and Syfy are spread among New York, California, and Florida.  Although only Asevedo resides in Louisiana, travel in excess of 100 miles would be required for NBCUniversal, the Parker Brothers defendants, and any other witnesses located in New York or Florida regardless of whether the trial were held in Los Angeles.   A transfer might be convenient for Syfy as well as the uncertain number of potential non-party witnesses located in Los Angeles, but it would cause countervailing inconvenience for Asevedo and any witnesses who live in New Orleans.   As a result, the ease of access to sources of proof, the availability of compulsory process to secure the

---

[44] Specifically, Talbert attests that "*Dream Machines* was produced by Triage, Inc.  Triage developed and sold rights in *Dream Machines* to Realand Productions, LLC.   Realand is a wholly-owned, indirect subsidiary of NBCUniversal.  To the best of my knowledge, Triage, Realand, and the production team [which] created *Dream Machines* are all based in Los Angeles, California."  R. Doc. No. 42-2, ¶ 5.

[45] R. Doc. No. 32-1, at ¶ 6.

[46] R. Doc. No. 42, at pp. 9-11.

attendance of witnesses, the cost of attendance for willing witnesses, and other practical problems that make trial of a case easy, expeditious and inexpensive do not weigh strongly in favor of either district.  *See, e.g.*, *Lindwey v. WMS Marine, Inc.*, No. 11-1949, 2012 WL 2339689, at *2 (E.D. La. June 19, 2012) (Duval, J.) (declining to grant a transfer when the factors did not weigh in favor of either district).  Although it may be a close call, the private interest factors do not "clearly demonstrate" that the Central District of California is the more convenient district.

The public interest factors add little to the analysis and are mostly neutral in this case. Neither district presents administrative difficulties flowing from court congestion and there is no need to avoid unnecessary problems of conflict of law.  The local interests of both districts support maintaining this trial in their respective forums.  Both forums are equally familiar  with the law that will govern the case.  Because NBCUniversal and Syfy have not carried their burden of showing that the Central District of California is clearly more convenient than the Eastern District of Louisiana, this Court will respect plaintiff's choice of venue.

## CONCLUSION

In light of the foregoing,

**IT IS ORDERED** that the motion to dismiss for lack of personal jurisdiction and improper venue is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion to continue to the motion to dismiss to allow for jurisdictional discovery is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that the motion to transfer venue is **DENIED**.

**IT IS FURTHER ORDERED** that Asevedo's request for attorney's fees is **DENIED**.

**IT IS FURTHER ORDERED** that the parties will contact the chambers of the U.S.

Magistrate Judge by **Wednesday, February 6, 2013**, to schedule a settlement conference.

New Orleans, Louisiana, February 4, 2012.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**